UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| PATRICK HERRON,<br><br>Plaintiff,<br><br>vs.<br><br>HART & COOLEY, INC.<br><br>Serve:<br><br>The Corporation Company<br>30600 Telegraph Road<br>Bingham Hills, MI 48025<br><br>Defendant. | ) | Case No. |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION TO COMPEL DEFENDANT HART & COOLEY, INC. TO PRODUCE DOCUMENTS IN RESPONSE TO SUBPOENA**

COMES NOW Plaintiff, Patrick Herron. ("Plaintiff"), by and through his attorneys, pursuant to Rule 37 of the Federal Rules of Civil Procedure and 9 U.S.C. § 7, and submits this Memorandum In Support Of Motion To Compel Defendant Hart & Cooley, Inc. To Produce Documents In Response To Subpoena.

## I. STATEMENT OF THE CASE

Plaintiff, along with his brother Robert Herron, founded Registers Unique, LLC ("Registers"), a manufacturer of decorative floor registers in 1988. Plaintiff began managing Registers' production operations full time in 1993 and continued in that capacity until the sale of Registers in 1999. In 1999, Registers was purchased by American Metal Products, Inc. ("AMP"), a wholly owned subsidiary of Masco Corporation ("Masco"). After the sale of

Registers to AMP, Plaintiff remained employed with Registers as the Operations Manager of its Union, Missouri facility.

Plaintiff's employment with AMP was subject to an Employment Agreement ("Employment Agreement") and a Management Incentive Compensation Plan (the "Plan"). Under the Plan, Plaintiff was entitled to payment of "Incentive Compensation" ("bonus") based upon Registers' performance. Beginning with the sale of Registers to AMP in 1999, Plaintiff received annual financial statements detailing Registers' performance for 1999 and 2000, in order to calculate his bonus under the Plan. In December 2000, AMP agreed to provide monthly statements, which it did until June 2001. Beginning in June 2001, AMP failed to provide Plaintiff with the monthly financial statements necessary to determine the amount of bonus to which he was entitled and, in addition, paid no bonus to Plaintiff.

In November 2001, Masco sold AMP, including AMP's subsidiary, Registers, to Defendant. Plaintiff's employment with AMP was terminated as a consequence of this purchase by Defendant.

Plaintiff's Employment Agreement with AMP/Masco contained a "Mediation/Arbitration" provision. It stated that:

> The parties hereby agree that, in accordance with Masco's Corporate Dispute Resolution Policy (the "CDRP"), mediation, and, if unsuccessful arbitration, will be the sole and exclusive remedies for any claims which may arise between the parties, in any way relating to this Agreement or for the breach thereof to the extent such claim are [sic] covered by the CDRP, and the Executive and Company agrees not to pursue any such claims through a court or a jury. . . .

Beginning in June 2001, the time period in which Masco began to fail to supply Plaintiff with Registers' monthly financial statements, a dispute arose between Plaintiff and Masco concerning the non-payment of bonuses pursuant to the Plan. Plaintiff and Masco attempted in good faith to resolve the dispute in mediation, but were unable to do so. Before the mediation,

Plaintiff had obtained possession of financial statements that showed that Registers performed sufficiently to earn bonuses under the Plan in the time period in which Masco refused to produce monthly financial statements to Plaintiff. Masco argues that Plaintiff's financial statements are not the true and accurate statements and claims the "overhead" and "credit memo" sections of Plaintiff's financial statements are incorrect. Masco further argues that Registers did not perform sufficiently to earn bonuses under the Plan.

Plaintiff and Masco submitted the dispute to arbitration with the American Arbitration Association in accordance with the arbitration provision contained in the Employment Agreement. The arbitration is tentatively set for November 2-3, 2004 in St. Louis, Missouri.

In order to conduct discovery before the arbitration, on or about June 24, 2004, Plaintiff served his Requests for Production of Documents ("Requests") on Masco. Plaintiff requested, *inter alia*, that Masco produce copies of the monthly financial statements that were not produced to Plaintiff and other documents that would support Masco's assertion that, based on Registers' performance, Plaintiff was not entitled to a bonus under the Plan. *See* Exhibit A to the Complaint at Requests 4, 8, 9, 10, 11.

On or about August 6, 2004 and in response to the specific Requests detailed above, Masco responded "Respondent believes that responsive documents are in the possession of American Metal Products." On August 31, 2004 and based on Masco's responses, Plaintiff issued a subpoena duces tucem ("subpoena") in the name of Arbitrator Denise Drake and directed to a Custodian of Records for Hart & Cooley, Inc., which was the current owner of AMP, by certified mail. The subpoena directed the Custodian of Records to produce:

- Any and all financial statements regarding the performance of Registers Unique, LLC, a division of American Metal Products, from January of 2001 to December 2002.
- Any and all documents relating or referring to the calculation of overhead expenses at American Metal Products' Mexicali, Mexico plant from June 2000 to December 2002.
- Any and all documents relating or referring to the calculation of "credit memo" charges for Register Unique, LLC, a division of American Metal Products, from January 2001 to December 2002.

*See* Exhibit B to the Complaint. All of the documents requested for production in the subpoena duces tucem were documents that Masco had responded were in the possession of AMP and cannot be obtained anywhere else.

On September 7, 2004, the subpoena was served on Defendant by certified mail, first class, at its principal place of business. *See* Exhibit C to the Complaint. On September 9, 2004, Ben Hood, counsel for Defendant, objected to the subpoena on the premise that the underlying arbitrator did not have to authority to issue a subpoena for the production of documents during pre-hearing discovery for a party that is beyond the 100 mile limit in Fed. R. Civ. P. 45(b)(2)[1] and because the subpoena is "overbroad, unreasonable, burdensome, and oppressive." *See* Exhibit D to the Complaint. In addition, Defendant claims that the subpoena requires the disclosure of trade secrets and/or sensitive commercial information.

---

1 Mr. Hood referenced "Federal Rule 45(a)(2)" in relation to his objection regarding to territorial limit of Fed. R. Civ. P. 45. The 100 mile territorial limit, however, is located in subsection (b)(2) of that Rule.

In a response, Plaintiff's counsel offered to enter into a protective order for the disclosure of the documents. *See* Exhibit E to the Complaint. Defendant did not respond in any way to this offer.

## II. AUTHORITY FOR MOTION TO COMPEL

Section 7 of the Federal Arbitration Act ("FAA") governs the compelling of discovery in arbitrations that involve interstate commerce.[2] Specifically, 9 U.S.C. § 7 provides as follows:

> The arbitrators selected either as prescribed in this title or otherwise, or a majority of them, may summon in writing any person to attend before them or any of them as a witness and in a proper case to bring with him or them any book, record, document, or paper which may be deemed material as evidence in the case. The fees for such attendance shall be the same as the fees of witnesses before masters of the United States courts. Said summons shall issue in the name of the arbitrator or arbitrators, or a majority of them, and shall be signed by the arbitrators, or a majority of them, and shall be directed to the said person and shall be served in the same manner as subpoenas to appear and testify before the court; if any person or persons so summoned to testify shall refuse or neglect to obey said summons, upon petition the United States district court for the district in which such arbitrators, or a majority of them, are sitting may compel the attendance of such person or persons before said arbitrator or arbitrators, or punish said person or persons for contempt in the same manner provided by law for securing the attendance of witnesses or their punishment for neglect or refusal to attend in the courts of the United States.

## III. ARGUMENT

### A. Arbitrator Has Authority to Issue Pre-Hearing, Non-Party Subpoena Outside of the Requirements of Fed. R. Civ. P. 45(b)(2).

In Mr. Hood's letter of September 9, 2004, Defendant, *inter alia*, objected to the issuance of the subpoena:

> Security Life Ins. Co. of Am. v. Duncanson & Holt, Inc., 228 F.3d 865 (8th Cir. 2000) not withstanding, we question the authority of an arbitrator to issue a

[2] The arbitrator's ability to issue discovery subpoenas is pursuant to R-21 of the Commercial Arbitration Rules of the American Arbitration Association. R-21 states:

(a) At the request of any party or at the discretion of the arbitrator, consistent with the expedited nature of arbitration, the arbitrator may direct

i) the production of documents and other information, and

ii) the identification of any witnesses to be called.

> subpoena commanding a non-party to provide the litigating parties documents during pre-hearing discovery, especially when the non-party and the documents are located well beyond the 100 mile territorial limit set forth in Federal Rule 45(a)(2) [sic].

*See* Exhibit D to the Complaint.

As counsel admits in his objections, the Eighth Circuit has ruled directly on point with this issue. In *Security Life*, the Eighth Circuit held that Section 7 of the FAA impliedly allowed arbitrators to issue pre-hearing discovery subpoenas to third parties. The Court held that the "interest in efficiency" present in arbitrations allowed such discovery. *See id.* at 870. "We thus hold it implicit in an arbitration panel's power to subpoena relevant documents for production at a hearing is the power to order the production of relevant documents for review by a party prior to the hearing." *Id.* at 870-871. As for the argument that the instant subpoena did not comply with Fed. R. Civ. P. 45(b)(2), the Eighth Circuit stated that, due to the fact that distance did not increase the burden of producing documents pursuant to a subpoena, the court "did not believe an order for the production of documents requires compliance with Rule 45(b)(2)'s territorial limit." *Id.* at 872. Thus, Plaintiff's service of the subpoena on Defendant by certified mail was proper under clear Eighth Circuit authority.

*Security Life* is directly on point with these issues. As a District Court in the Eighth Circuit, this Court is bound by decisions of the Eighth Circuit. *See United States v. Johnson*, 338 F.3d 918 (8th Cir. 2003) ("[N]either a district court nor a subsequent panel of [the Eighth Circuit] is free to disregard a previous opinion of this Court on the theory that the earlier opinion was an incorrect interpretation. . . . ."); *Love v. Phoenix Family Serv.,* 2003 U.S. Dist. LEXIS 14082, *2-*3 (S.D. Iowa 2003) (holding that a district court was not the correct forum to challenge Eight Circuit precedent). Pursuant to Eighth Circuit precedent, it is clear that Plaintiff's subpoena was properly issued and served upon Defendant. Defendant's objections regarding the authority of

the arbitrator to issue this subpoena and the service of the subpoena by certified mail are, therefore, incorrect and, in view of Defendant's admissions as to clear Eighth Circuit authority, appear to be disingenuous.

B. Subpoena Is Not "Overbroad, Unreasonable, Burdensome, and Oppressive."

Defendant also claims that the subpoena is "overbroad, unreasonable, burdensome, and oppressive." Fed. R. Civ. P. 26(b)(a) provides the scope of discoverable material:

> **(b) Discovery Scope and Limits.** Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows:
>
> > **(1) In General.** Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party…

These requests cannot be "overbroad, unreasonable, burdensome, and oppressive" because they are directly relevant to the underlying arbitration and cannot be obtained through any other avenues. The issue of the underlying arbitration is whether Plaintiff was paid bonuses under the Plan to which he was entitled. These bonuses were tied to the performance of Registers. Masco, the former owner of Registers and AMP, answered that documentation that details the profitability of Registers are in the possession of Defendant, the present owner of Registers and AMP. *See* Exhibit A to the Complaint. Based on this information, Plaintiff served the instant subpoena on Defendant. Thus, it is understated to simply call these documents relevant. These documents are the lynchpin to the entire arbitration. While it is unfortunate that discovery must be served on a non-party to an arbitration like Defendant, the simple fact is that, according to Masco's responses to Plaintiff's discovery, Defendant appears to be the only party in possession of this highly relevant material. In addition, the only reason that Defendant is in this situation is due to its purchase of AMP and Registers and all of the accompanying financial

documents. Defendant is not a totally innocent party, with no connection to the underlying matter, that has been drawn into this dispute by pure happenstance.

Furthermore, Defendant's objections are not proper. "The fact that production of documents would be burdensome and expensive . . . is not a reason for refusing to order production of documents. *See, e.g., Wagner v. Dryvit Sys., Inc.*, 208 F.R.D. 606, 610 (D.C. Neb. 2001). Defendant has failed to even formulate how these requests are "overbroad, unreasonable, burdensome, and oppressive." Thus, it is hard-pressed to understand how such vague objections could support a legally defensible refusal to produce documents to a properly issued and served subpoena. Defendant's tactics are simply to delay its obligation to respond to the subpoena at issue.

C. Defendant Has Failed to Show How the Requested Documents Are Trade Secrets And, Even If The Requested Documentation Are Trade Secrets, Plaintiff Has Offered To Enter Into a Protective Order.

Defendant also objects to the subpoena because it requests "trade secrets." "[T[here is no absolute privilege for trade secrets or similar confidential information." *Federal Open Market Comm. of Federal Reserve Sys. v. Merrill*, 443 U.S. 340, 362 (1979); *Centurion Indus., Inc. v. Warren Steurer & Assocs.*,665 F.2d 323, 325 (10th Cir. 1981); *Flint Hills Scientific, LLC v. Davidchack*, 2002 U.S. Dist. LEXIS 997, *29 (D. Kan. 2002). To resist disclosure of alleged trade secret information, a person must first establish that the information is a trade secret and other confidential research, development, or commercial information and then demonstrate that is disclosure might be harmful. *Flint Hills*, 2002 U.S. Dist. LEXIS at *29 (citing *Centurion*, 665 F.2d at 325-26)). This inquiry is whether such disclosure will result in a "clearly defined and very serious injury." *Flint Hills Scientific, LLC v. Davidchack*, 2002 U.S. Dist. LEXIS 952, *5 (D. Kan. 2002) (citing *Zapata v. IBP, Inc.*, 160 F.R.D. 625, 627 (D. Kan. 1995)). If these requirements are met, the burden then shifts to the party seeking discovery to establish that

disclosure of a trade secret or other confidential information is relevant and necessary to the action. *Id.* Finally, the district court must balance the need for discovery of the trade secrets against the claim of injury resulting from the disclosure. *Id.*

In this matter, Defendant has not established that the information requested contain trade secrets or confidential information. In fact, by making the statements "assuming such records still exist", it is clear that Defendant has not taken the opportunity to locate the records and evaluate whether the records are indeed trade secret information. *See* Exhibit D to the Complaint. Defendant simply makes the blanket assertion that the records are confidential. However, a finding that documents are confidential is not the final question. *Flint Hills*, 2002 U.S. Dist. LEXIS 951 at *5. Plaintiff must demonstrate, with particular and specific demonstrations of fact, that the disclosure will cause a "defined and very serious injury." *Id.* at *5-*6. Defendant has not made such a showing.

Even if Plaintiff can show that the information requested is trade secret information and confidential, the documentation should be disclosed pursuant to a protective order. While it is understandable that a party does not want to divulge trade secrets, "tools such as protective orders are available to make this process less risky, . . . ." *IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581, 53 (7th Cir. 2002). If trade secrets are deemed relevant and necessary to the plaintiff's case, an appropriate safeguard that should attend their disclosure is by means of a protective order. *Centurion*, 665 F.2d at 326. Other courts have ordered disclosure of trade secret information pursuant to a protective order that adequately protected the disclosing party's interests in confidentiality. *See, Martin Properties, Inc. v. Florida Indust. Investment Corp.*, 2003 U.S. Dist. LEXIS 6181, *4 (N.D. Ill. 2003) (ordering disclosure of alleged trade secret information pursuant to protective order); *Gohler v. Wood*, 162 F.R.D. 691, 697 (D. Utah 1995) (ordering disclosure of trade secret information where "the protective order limits disclosure of

confidential information material to those who are necessarily involved in the case, and these parties may use this information only for purposes of litigating this case, excluding any business purpose . . . .")

Plaintiff, in good faith, offered to enter into a protective order to facilitate the disclosure of these documents. *See* Exhibit E to the Complaint. Defendant completely ignored this offer and did not respond in any way. If the documentation is found to be trade secret information and given the documents relevance to the underlying arbitration, the documents should be disclosed pursuant to an agreed-upon protective order.

Thus, Defendant has not demonstrated how these documents are trade secrets and, therefore, cannot hid behind blanket, vague assertions. However, even if the documentation is trade secret information, the documents should be disclosed pursuant to a protective order that protects those confidentiality concerns.

## IV. CONCLUSION

The requested documentation should be disclosed. First, pursuant to *Security Life*, the underlying subpoena was properly issued and served. Second, the requested documentation is material to the arbitration and, thus, is not "overbroad, unreasonable, burdensome, and oppressive." Finally, Defendant has not shown how the requested documentation contains trade secrets. However, if it does, it should be disclosed pursuant to a protective order.

Based on the foregoing arguments, Plaintiff's Motion to Compel should be granted.

Respectfully submitted,

GALLOP, JOHNSON & NEUMAN, L.C.

By: /s/ Chad A. Horner

Jon A. Bierman, #84825
Chad A. Horner # 122773
101 South Hanley, Suite 1600
St. Louis, Missouri 63105
Telephone (314) 615-6000
Facsimile (314) 615-6001

Attorneys for Plaintiff

The undersigned hereby certifies that the foregoing Motion was served via regular U.S. Mail (postage prepaid), on this 15th day of October 2004, to:

Hart & Cooley, Inc.
The Corporation Company
30600 Telegraph Road
Bigham Hills, MI 48025

/s/ Chad A. Horner